**AMERICAN INS. UNION, Inc., v. KEITH.**

No. 13208.

Court of Civil Appeals of Texas. Fort Worth.

Sept. 20, 1935.

Rehearing Denied Oct. 11, 1935.

C. S. Younger and L. E. Bilger, both of Columbus, Ohio, and John Davis, of Dallas, for appellant.

Sullivan, Speer & Minor, of Denton, and Marvin Roberson, of Fort Worth, for appellee.

MARTIN, Justice.

Appellee, Mrs. Martha Josephine Keith, a widow, filed this suit in the district court of Denton county against the American Insurance Union, Inc., alleging, in substance, that she became a member of the American Insurance Union, a fraternal benefit insurance society, in December, 1927, holding a certificate of life insurance in the sum of $3,000, upon which she had paid in monthly payments of $46.30 each a sum aggregating $2,778; that by virtue of a contract entered into on the 30th day of June, 1931, the defendant corporation took over all the assets and assumed all the obligations of the society to which she belonged, with the express agreement that its members should, on application and surrender of their certificates in the society, be reinstated in the company, in the same amounts, at the same rates, and without medical examination. She alleged that the company was organized for the purpose of reinsuring the members of the society in a legal reserve insurance company. She alleged that in December, 1932, she applied for the reinsurance referred to, tendering her certificate for cancellation and the monthly assessment of $46.30, and the company refused to issue same, stating that it had discontinued the use of the step rate policy of the kind and character she held and offering only to replace the same with another kind of policy costing $105.06 per month; that she declined to pay such sum, and, charging such action of the company to be a breach of the contract, alleged further that she is 79 years of age and in poor health and is unable to get other insurance. She claims damages in the sum of her payments with 6 per cent. interest from their respective dates.

The appellant answered by general exceptions, general denial, and special pleas, in substance, that it is a corporation, a legal reserve life insurance company, and not the successor of the society to which appellee belonged; that, under the contract alleged, it was only a trustee and only acted as such for the society; that all the assets of the society were taken away from the company by receivers appointed by Ohio state courts; that the contract of June 30, 1931, provided for the issue of a policy by the company to a member of the society only on "proper adjustment of premiums and reserves," and that appellee had not made or tendered such.

The case was tried without a jury, and after judgment in favor of the appellee, the court, upon request, filed findings of fact as follows:

"The plaintiff instituted this suit against the defendant wherein she claimed damages by reason of the wrongful cancellation of a policy of insurance in the amount of $3000.00, issued by the American Insurance Union, Fraternal Benefit Society, incorporated under and by virtue of the laws of the State of Ohio, and alleged her measure of damages to be the return of all premiums so paid on the policy, plus 6% interest from the day of such payment; in accordance with and at the direction of a Resolution adopted by a special call session of the National Fraternal Congress of the Fraternal Company as of February 22–23, 1929, the officers of the Fraternal Company organized the American Insurance Union, Incorporated, the defendant in this case, for the specific purpose of reinsuring the insurance then held by the membership of the Fraternal Company in the defendant company; and, in pursuance to the resolution, the officers of the fraternal company did organize the defendant company, known as the American Insurance Union, Incorporated; the officers of the defendant company were also officers of the Fraternal Company; after the defendant company had so been organized, on June 30th, 1931, the officers of the respective companies, same being officers of both the Fraternal Company and the defendant Company, entered into a reinsurance agreement, by the terms of the reinsurance agreement each member holding a policy in the Fraternal Company was privileged to exchange his fraternal policy to a legal reserve form policy, without medical examination and regardless of age, health conditions, or any change in rates; at the time of the execution of the rein-

surance contract the defendant company was issuing the type and form of policy as was held by the plaintiff, which policy was known as the Merger Step Rate Policy, which was a continuation of the Cash Saving Step Rate Policy, and the step rate policy, issued and offered to be issued by the defendant company, carried the same premium rate as did the policy of the plaintiff, and that a copy of this type of policy was a part of the reinsurance agreement and a form of the policy was filed with the Commissioners of Insurance of the various states at the time that the Superintendent of insurance of the State of Ohio approved the reinsurance agreement; the reinsurance agreement, which agreement was pleaded by both plaintiff and defendant and made a part of their pleadings, stipulated that the exchanges of their fraternal policies to the legal reserve form might be made any time within fifteen years from date of the reinsurance agreement, which agreement was dated June 30, 1931, in accordance with the terms of the reinsurance agreement and by a preponderance and weight of the testimony the plaintiff voluntarily, November 25, 1932, made her application for such exchange, tendering therewith the amount of her first monthly premium thereon, which was received by the defendant in due course; upon receipt of the application for exchange and the first monthly premium thereof, the defendant refused to accept the application for exchange and refused to issue to the plaintiff the policy applied for, stating as the reason therefor that on May 1, 1932, that the defendant company had discontinued the issuance of the Step Rate Form policies, and therefore refused to the plaintiff the policy applied for but offered to issue another form of policy in the amount of $3000.00 that would cost the plaintiff $105.06 per month, which was more than double the amount of the monthly premium on the policy applied for by the plaintiff, and the plaintiff refused to accept the substitution and elected to treat the contract as breached, and instituted her suit in this court for damages for the wrongful cancellation of her insurance; the court further finds that at the time of the breach and prior thereto, and ever since, the plaintiff by reason of her advanced years and her poor health condition that she was unable and has been unable to obtain life insurance from any other reliable life insurance company as the testimony shows that her health condi-

tion has been bad for a period of more than seven years.

"The Court finds from the evidence in the case that all material allegations of the plaintiff were established by the preponderance of legal and competent testimony, and that the defendant refused to make the exchange; it was agreed and admitted in open court that if the plaintiff was entitled to recover that her measure of damage was the return of all premiums paid to the defendant and predecessor company, the American Insurance Union, Fraternal, plus 6% interest from the date of each payment, and it was further established by the evidence of both parties that the amount of said premiums, in toto, was $2778.00, and that in the payment of these premiums the plaintiff was required and did pay $46.30 each month on said policy from November 1927 through and including November 1932; that the amount of said premiums, plus 6% interest from the date of each payment, aggregated at the time of the rendition of the judgment to the sum of $3026.67."

Appellee attacks the court's findings and conclusions upon seven assignments of error, the first being to the effect that the company, having lawfully administered the affairs of the society from June 30, 1931, to May 3, 1933, and then properly accounted to the receivers of the society, is not liable in a suit for damages by the plaintiff.

█ Under our law it seems that a receivership does not affect the relationship of parties to a pre-existing contract, 36 Tex. Jur. p. 31, and the contract sued upon in this case is certainly one "pre-existing." The fact that a defendant's entire estate has passed into the hands of a receiver is held in the case of American Well Works v. De Aguayo (Tex. Civ. App.) 53 S. W. ·350, to be no ground of defense. The assignment is overruled.

█ By its second assignment, appellant claims that no consideration recognized in law as a good or valuable consideration passed from appellee to appellant.

The record, in our judgment, shows ample consideration. The company was organized for the express purpose of carrying this and other insurance risks in a legal reserve company, rather than as a fraternal insurance society. Until the necessary changes are made, the company had to set up and maintain separate accounts of the

company's business and the society's business. During several months Mrs. Keith paid her regular dues to the company, and we are led to the conclusion from the entire record that these relations constituted a sufficient consideration for the society and each of its members to support the contract. We therefore overrule this assignment.

Appellant's 3d, 4th, 6th, and 7th assignments of error set up in different form that under the contract of June 30, 1931, which provided for the reissue of policies in the company to be made upon the surrender of the fraternal policy and upon "proper adjustment of premiums and reserves" and that such adjustment of premiums and reserves not being first made by Mrs. Keith, she was not entitled to the policy she asked for. This question is directly raised in each of these assignments. Assignment No. 5 simply raises the point that the insurance company could not be bound unless it was shown to have made a contract directly with Mrs. Keith to issue such policy. These assignments, all depending upon the construction to be given to the contract of June 30, 1931, we will discuss altogether.

The decision of this case depends upon the construction to be given to the clause "upon proper adjustment of premiums and reserves" as these words are found in paragraph 8 of the contract of June 30, 1931, between the mutual society, represented by its officers, and the incorporated company, represented by its officers. This contract was made for the benefit of hundreds or probably thousands of members of a once great fraternity. There was doubtless a wide range between the ages of the youngest to the oldest of its members. There were also members under suspension, who doubtless would want to be reinstated and get the benefit of the regular "old line" insurance offered by the new company. A qualifying clause was therefore necessary to provide for "a proper adjustment" of rates or premiums, as to them. Many might want to change from a step rate to a level rate or from a straight life policy to an endowment policy and in all such cases an "adjustment of premium" would be proper and necessary. But in the case of Mrs. Keith, no such adjustment could be made. She had already "stepped over the dead line" so far as a step rate as to her premium was concerned, for having passed the age of 73, she was on a level rate basis for the balance of her life. There was no adjustment to make—she had paid her last month's dues when she asked for the company's policy, and she tendered the same sum for the first month's premium under the new policy she expected to get. There was nothing to adjust between her and the officers of the company.

There was also another adjustment to make—that of reserves. As we understand it, this refers to those regulations adopted by the companies or required by the insurance laws of the various states, such as the deposit of certain securities with the Insurance Commission, representing the reserve funds of the company so deposited for the protection of policyholders, or else invested by the company in more or less liquid assets, to the end that beneficiaries might be paid within a reasonable time after death of the assured. We agree with learned counsel for the appellee that the burden was upon the company to show what "adjustments of premiums and reserves" should have been made between this elderly lady and the company as a prerequisite or condition precedent to the reissue of her insurance in the company. All facts bearing upon the subject of rates and reserves were peculiarly within the knowledge of the company.

The "rider," furnished the appellee by the company to be attached to her policy clearly informed her of the premiums she would have to pay, and its terms fully ratified the contract made by her representatives on June 30, 1931. There was nothing for her to adjust except to pay the next month's assessment of premium, surrender her fraternal policy or certificate, and ask for the change of policy. It follows that assignments 3 to 7 are also overruled.

Counsel for the parties litigant have submitted much written and printed argument pro and con upon the question of whether the transaction of June 30, 1931, was a merger or a trust agreement. It is unnecessary, in the view we take of this case, for us to decide this question.

The facts are that the contract was made with the corporation by the accredited representatives of Mrs. Keith for her benefit. The corporation was itself a child of necessity, formed for the express purpose of taking care of the insurance of Mrs. Keith and all other members of the society. The society accounts were carried separately on the books of the corporation. Its new business was written in the books of the cor-

poration, and, as transfers were made from the one to the other, the society membership decreased—no "new blood" came in on the fraternal side.

 For a time the company offered a step rate policy along with nine other forms of policy to the public and to the fraternal membership as well. Then, by resolution of its directors, it ceased to offer this particular sort of policy some six months before Mrs. Keith applied for reinsurance. And then on May 3, 1933, it turned over the remaining assets and the entire business of the fraternal branch to receivers for liquidation under the orders of court. Then the only offer made in discharge of its obligations to Mrs. Keith was a policy costing $105.06 per month. And learned counsel for appellant say in their argument "if she (appellee) has any cause of action, it is against the American Insurance Company, Fraternal and not against the American Insurance Company, Incorporated."

Being driven by the facts to a contrary opinion, we affirm the judgment of the trial court.