AMERICAN INSURANCE UNION, INCORPORATED, v. MRS. MARTHA J. KEITH.

No. 7017.   Decided March 30, 1938.
Rehearing overruled May 11, 1938.
(116 S. W., 2d Series, 367.)

*C. S. Younger* and *L. E. Bilger,* both of Columbus, Ohio, and
*John Davis,* of Dallas, for plaintiff in error.

The plaintiff having failed to plead and prove that she made
proper adjustment of premiums and reserves, in compliance
with the conditions of the alleged contract, was not entitled to
have the defendant company issue her a contract or policy of
insurance. Smith v. Fort, 58 S. W. (2d) 1080; Burns v. Ameri-
can Natl. Ins. Co., 280 S. W. 762; 12 C. J. 408.

*Marvin Roberson, McLean & Scott* and *Grover Johnson,* all
of Fort Worth, and *Speer & Minor,* of Denton, for defendant in
error.

MR. JUDGE TAYLOR delivered the opinion of the Commission
of Appeals, Section B.

Mrs. Martha Josephine Keith sued the American Insurance
Union, Inc., defendant, to recover damages for an alleged breach
of its contract to exchange her policy in the fraternal society

which issued same, for defendant's legal reserve policy in like amount. Judgment was rendered for plaintiff, the amount of recovery being calculated according to an agreement as to the measure of damages. The Court of Civil Appeals affirmed the judgment. 86 S. W. (2d) 263.

Section 3, and Section 4 in part, and Section 8 of the contract read:

"SECTION 3. The company hereby agrees to accept the transfer to it and to reinsure each certificate or policy so transferred held by a living member of the society, regardless of age or sex, who is in good standing in the society when this contract becomes effective, including every member whose certificate or policy has lapsed and who shall be reinstated in accordance with the terms and conditions of such certificate or policy, provided, however, that such acceptance and reinsurance by the company shall not be effective until such member voluntarily transfers or exchanges his certificate or policy heretofore issued and/or assumed by the society and has received during his life time in lieu thereof a policy issued by this company.

"SECTION 4. All members of the society who do not transfer and/or exchange their certificates or policies of insurance for policies of insurance issued by the company shall be maintained in a separate group hereinafter designated as the fraternal group 'and shall thereafter pay to the company such premiums and/or assesments as they would have been required to pay to the society under the terms and provisions of their respective certificates or policies.' * * *

"SECTION 8. Each member of the society shall have the right to transfer or exchange his certificate or policy to any form of policy issued by the company upon proper adjustment of premiums and reserves.

"No further medical examination· shall be required except in cases where the rate of premium is lowered or the amount of insurance at risk is increased, in which event such transfer or exchange ·shall be subject to a showing of insurability satisfactory to the company."

There was attached to plaintiff's policy a rider, the material part of which reads:

"On and after January 1, 1930, each step rate policy-holder will pay his premiums on the American Experience Table (interest 3½%) at his age attained each calendar ·year and will receive his share of the savings in the form of a dividend in

cash or by a reduction of his premium or by addition to the face of his policy, which addition shall bear interest and is subject to withdrawal at any time. That is to say, each member will have returned to him his share of the excess paid over and above the actual mortality cost and reserve each year. These dividends will be determined and apportioned annually. Bear in mind that in the near future you can exchange this policy for a Legal Reserve policy in the new company without any cost for making the exchange, and without any change in the table of annual step rates as printed on the back hereof. * * * ."

Plaintiff set out in her petition that at the time the contract was entered into she was carrying a "merger step-rate" policy in the fraternal society in the sum of $3,000.00. She alleged the facts constituting the reinsurance agreement, and the facts alleged to .constitute its breach. Defendant answered by a general demurrer, special exceptions, a general denial and special denials. Neither the judgment nor the transcript discloses that the general demurrer and special exceptions were acted upon by the court. It was agreed by the parties that if plaintiff was entitled to recover, her measure of damage was the return of all premiums paid, with interest. This included premiums which had been paid to the fraternal society as well as premiums paid to the alleged reinsuring company. The case was tried without a jury. Upon rendition of the judgment defendant requested the court to file findings of fact and conclusions of law. The findings are incorporated in the opinion of the Court of Civil Appeals and need not be set out here in full. They include findings that the officers of the fraternal society organized the reinsuring company and that the officers of the society became also the officers of the company upon its organization; that on June 30, 1931, a reinsurance agreement was entered into whereby each member holding a policy in the society was privileged to exchange his fraternal policy for a legal reserve policy in the company, without medical examination, and regardless of age, health conditions, or any change in rates. Other material findings read:

" * * * at the time of the execution of the reinsurance contract the defendant company was issuing the type and form of policy as was held by the plaintiff, which policy was known as the Merger Step Rate Policy, which was a continuation of the Cash Saving Step Rate Policy, and the step rate policy, issued and offered to be issued by the defendant company, carried the same premium rate as did the policy of the plaintiff, and that a copy of this type of policy was a part of the reinsur-

ance agreement, and a form of the policy was filed with the Commissioners of Insurance of the various states at the time that the Superintendent of Insurance of the State of Ohio approved the reinsurance agreement;" * * * the plaintiff voluntarily, November 25, 1932, made her application for such exchange, tendering therewith the amount of her first monthly premium thereon, which was received by the defendant in due course; upon receipt of the application for exchange and the first monthly premium thereof, the defendant refused to accept the application for exchange and refused to issue to the plaintiff the policy applied for, stating as the reason therefor that on May 1, 1932, that the defendant company had discontinued the issuance of the Step Rate Form policies, and therefore refused to the plaintiff the policy applied for but offered to issue another form of policy in the amount of $3,000.00 that would cost the plaintiff $105.60 per month, which was more than double the amount of the monthly premium on a policy applied for by the plaintiff, and the plaintiff refused to accept the substitution and elected to treat the contract as breached. * * * all material allegations of the plaintiff were established by the preponderance of legal and competent testimony, and that the defendant refused to make the exchange; it was agreed and admitted in open court that if the plaintiff was entitled to recover that her measure of damage was the return of all premiums paid to the defendant and predecessor company, the American Insurance Union, Fraternal, plus 6% interest from the date of each payment, * * * ."

No exceptions were taken to the findings and no request was made for additional findings.

1 Writ of error was granted upon the assignment alleging that the company took over the assets of the society in trust and later made an accounting therefor to a receiver appointed to administer same. The record discloses that the receiver to whom the accounting was made was not appointed until May 3, 1933, which was several months after the alleged breach occurred. Regardless of how the assets of the society were transferred to defendant, whether unqualifiedly or in trust, the company's obligation to make the exchange of policies was not thereby rendered of no effect. Furthermore there is evidence that the company, the officers of the society and company being the same, took charge of all of the assets of the society, took charge of all of its books and paraphernalia, its record cards, applications, medical examinations, all applications on hand, and took active control and management of all of its affairs; that the officers of the company were the same persons who were the officers of

the society; that after the company assumed control as above stated the society transacted no further business; that all of the agency contracts of the society were cancelled on July 1, 1931, by the company, and thereafter it (the society) ceased to be a going concern.

2  The attempted justification by defendant for its failure to make the exchange applied for by plaintiff to the effect that it had discontinued offering the policy for sale or exchange, is without merit. Defendant issued such a policy for eleven months, and it does not appear *as a matter of law* that the discontinuance of its issuance was not of its own volition in disregard of a continuing obligation on its part to have such policy available for exchange. Defendant's failure to grant the application to exchange, if without remedy, would clearly result in an injustice to plaintiff in view of the fact that plaintiff at the time the reinsurance agreement was made was above seventy-five years of age, and the premium rate on her policy, under the view of the evidence favorable to her, had become level and was not subject to be increased.

We are in accord with the decision of the Court of Civil Appeals with respect to the company's complaint that plaintiff refused to make "proper adjustment of premiums and reserves." There is evidence that the premium rate carried by her policy was not subject to be increased, and it will hardly be questioned that adjustment of reserves is not a duty that either devolves upon, or could be performed by, a policy holder.

The conclusions reached upon the questions discussed are decisive of all the assignments presented by the record. Defendant's argument that no contract was entered into because the counter offer which it made plaintiff to issue her a policy at an increased rate was not accepted, is not persuasive. Plaintiff elected to treat the contract as breached upon defendant's refusal to issue the policy applied for under its continuing reinsurance agreement.

The present cause of action is clearly for damages for an alleged breach of contract. The findings of fact made by the trial court and approved by the Court of Civil Appeals, support the judgment of the trial court. While the case of Ericson v. Supreme Ruling of Fraternal Mystic Circle, 105 Texas 170, 146 S. W. 160, involves a contract distinguishable in form at least from the present contract (whether in effect under the trial court's finding herein we need not determine), its holding with respect to an attempted re-rating of plaintiff as constituting a

repudiation of defendant's contractual obligation to continue her policy at the original rate, sustains the holding herein with respect to the company's breach of contract. The measure of damage applied was agreed upon.

The judgments of the trial court and Court of Civil Appeals are affirmed.

Opinion adopted by the Supreme Court March 30, 1938.

### ON MOTION FOR REHEARING.

**3** Plaintiff in error's motion for rehearing questions the correctness of the statement in the opinion that no exceptions were taken to the findings of fact, and states in this connection that in its amended motion for new trial it objected to material parts of the findings and conclusions and excepted to the court's order overruling the motion. The order was excepted to and notice of appeal was duly given, but, as stated in the opinion on original hearing, no exceptions were taken to the findings and no request was made for additional findings. Plaintiff in error's procedure was all that was necessary in order to secure consideration of all of its assignments. The opinion discloses that all assignments were considered. We are not in agreement with plaintiff in error's theory of the case urged both upon original hearing and in its motion for rehearing, that there was no issue of fact in the case. We adhere to the conclusion reached upon original hearing. The motion is overruled.

Opinion adopted by the Supreme Court May 11, 1938.